**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-1616**

———————

ROBERT BRIGGS,

Plaintiff - Appellant,

versus

MARRIOTT INTERNATIONAL, INCORPORATED; LIBERTY
LIFE ASSURANCE COMPANY OF BOSTON,

Defendants - Appellees.

———————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Alexander Williams, Jr., District Judge.
(CA-04-3427-8-AW)

———————

Argued: September 19, 2006          Decided: November 28, 2006

———————

Before NIEMEYER, Circuit Judge, HAMILTON, Senior Circuit Judge, and
Henry F. FLOYD, United States District Judge for the District of
South Carolina, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

John Marshall, MULHERN, PATTERSON & MARSHALL, L.L.P., Rockville,
Maryland, for Appellant. Henry Mark Stichel, GOHN, HANKEY &
STICHEL, L.L.P., Baltimore, Maryland, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Robert Briggs commenced this action under § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a), for long-term disability benefits under an employee benefit plan sponsored by his employer, Marriott International, Inc., and administered by Liberty Life Assurance Company of Boston. Beginning in September 2002, Liberty Life began paying Briggs short-term disability benefits based on Briggs' chronic lower-back and leg pain, but, on August 21, 2003, following a review, it denied his claim for long-term disability benefits. When Briggs' treating doctor complained about the decision, Liberty Life reopened Briggs' claim, collected additional medical information, and submitted the file to an independent orthopedic surgeon for review, who concluded that Briggs was "capable of a sedentary job with frequent position changes." Liberty Life again denied Briggs' long-term disability benefits on March 9, 2004. Briggs then filed this action.

The district court granted summary judgment to the defendants, concluding that based on the objective evidence relating to Briggs' disability, "Liberty [Life] properly concluded that, with the appropriate sedentary modifications, Briggs was able to perform the duties of [his job]." The court explained:

> In sum, the evidence supports Liberty's discretionary decision that Briggs did not provide sufficient evidence of a disability under the Policy. While Liberty has a conflict of interest, based on the reasons articulated

-2-

above, this court concludes that Liberty's decision was nevertheless "consistent with an exercise of discretion by an [administrator] acting free of the interests that conflict with those beneficiaries."

Briggs v. Marriott Int'l., Inc., No. CA-04-3427-8-AW (D. Md. May 6, 2005) (quoting Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997)). Based on our de novo review of the district court's decision, we affirm.

For some 21 years, Briggs worked for Marriott International in its WorldWide Reservation Center as a senior systems analyst, a sedentary job that primarily entailed computer work.

In 1989, Briggs was diagnosed with a herniated disc, and in 1991, he underwent surgery -- a discectomy to remove the herniated portion of the disc and a laminectomy to remove a portion of the vertebra that impinged on the nerve. Six years later, Briggs had follow-up surgery, in which the fifth lumbar and first sacral vertebrae were fused and a Ray Cage installed to limit movement of his lower spine.

Even though the surgeries relieved Briggs' pain for a while, it returned, and Briggs continued to see several doctors -- Dr. Michael Anchors, his primary physician; Dr. William Lauerman, an orthopedic surgeon; Dr. Rosita Dee, a pain management specialist; and Dr. Harikant Shah, his treating orthopedist.

In September 2002, Briggs made a claim to Liberty Life for disability benefits and submitted records from his doctors, as well as x-rays, myelogram results, and several MRIs. In addition, Dr.

Anchors and Dr. Lauerman submitted opinions on Briggs' behalf, concluding that Briggs was totally disabled. Liberty Life investigated the claim and supplemented its file with video surveillance of Briggs, which captured Briggs walking with and without a cane, driving his car, checking his oil, carrying a trash bag and a small suitcase, and picking up medications. Liberty Life also had Briggs examined by Dr. Michael April, an internist who performed work for Liberty Life. Dr. April found mixed results from his tests of Briggs' abilities, yet determined that Briggs had a "sedentary functional capacity." After submitting Dr. April's findings to Dr. Anchors, Briggs' primary doctor, and receiving no substantive response, Liberty denied Briggs' disability claim with a letter dated August 21, 2003, in which it stated:

> Based on the medical information in relation to your occupation requirements, you are able to perform the duties of your Own Occupation. Therefore, you do not meet your policy's definition of disability. We must close your claim as of August 22, 2003.

Shortly thereafter, Dr. Anchors sent Liberty Life a cryptic letter, in which he suggested that Briggs was disabled by his pain medications. Without a request from either Dr. Anchors or Briggs himself, Liberty Life reopened the claim, collected more medical information, and sent the entire file to Dr. Richard Silver, an independent and elaborately credentialed orthopedic surgeon, for another opinion. Based on his review of the file, Dr. Silver found

-4-

no objective evidence to support a finding of disability. He stated:

> Mr. Briggs is not capable of performing activities consistent with a light or heavy work capacity. Mr. Briggs is, however, capable of a sedentary job with frequent position changes. . . . [H]e certainly could be functional in a sedentary capacity as a senior system analyst for Marriott.

Thus, on March 9, 2004, Liberty again denied Briggs' claim for long-term disability benefits, and this suit ensued.

The benefit plan under which Briggs brings his claim grants Liberty Life "the authority, in its sole absolute and final discretion, to construe the terms of this policy and to determine benefit eligibility hereunder." The plan also required Briggs to prove his claim for disability with "objective medical evidence," a provision permitting Liberty Life to discount self-serving claims and reports of disability in favor of objective evidence. The administrator's decision on a claim must nonetheless be the result of a deliberate principled reasoning process and be supported by substantial evidence. See Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997).

Because Liberty Life acts both as a trustee for the beneficiaries and as a potential payor on the claim, we heighten our scrutiny of Liberty Life's discretionary decision to the extent necessary to simulate review of an unconflicted trustee. See Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997); Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80 (4th Cir. 1993).

Briggs challenges the administrator's discretionary decision in two respects. First, he says that Liberty Life ignored evidence of the effect of his medications on his ability to do his job. While Briggs was taking an increasing amount of painkillers over the years, he did not provide sufficient objective evidence that the painkillers disabled him from working. His best evidence is a letter from Dr. Anchors, his primary care physician, in which Dr. Anchors stated:

> I don't believe [Briggs] can do serious mental work on those meds, and I don't see how he can sit without them. In fact, when Robert sees me in the office, he remains standing, propping himself against the wall or supporting himself erect with hands on the exam table as people with severe lumbar nerve compression characteristically do.

The relevant file also shows that when Briggs talked with representatives of Liberty Life on the telephone, he sounded "groggy" and "disoriented." Briggs himself reported that the medications interfered with his "ability to concentrate on complex tasks." This evidence, however, is not the objective medical evidence required by the terms of the plan. Dr. Anchors' letter stops short of giving a medical opinion that Briggs was unable to do his job because of the painkillers that he was taking, and the other generalized anecdotes do not amount to objective medical evidence. On this record, we cannot conclude that the administrator acted unreasonably in rejecting this evidence and denying Briggs' claim.

Briggs also contends that Dr. Silver, Liberty Life's hired independent medical consultant, systematically misread the record. He complains that Dr. Silver repeatedly and almost automatically used the term "mild" to describe Briggs' condition. Yet, Briggs fails to recognize that nearly every use by Dr. Silver of that term <u>directly tracks</u> language used by the MRI technicians who evaluated Briggs' back and whom no one has accused of any wrongdoing.

Even with heightened scrutiny applicable in this case, we cannot conclude that the administrator's decision was unreasonable based on the record and the processes that the administrator employed. As we have noted, the "trustee's discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." <u>Booth v. Wal-Mart Stores, Inc.</u>, 201 F.3d 335, 341 (4th Cir. 2000).

<u>AFFIRMED</u>